UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|                          |   |                          |
|--------------------------|---|--------------------------|
|                          ) |   | CHAPTER 7                |
| IN RE:                   ) | CASE NO. 05-68109        |
| DALE EUGENE WILLIAMS,    ) |                          |
| TRACY RENEE WILLIAMS,    ) | JUDGE RUSS KENDIG        |
|         Debtors.         ) |                          |
|                          ) | **MEMORANDUM OPINION (NOT INTENDED FOR PUBLICATION)** |

This matter is before the court on remand from the Bankruptcy Appellate Panel of the Sixth Circuit (hereafter "BAP"). On May 3, 2006, this court entered an order denying motion for reconsideration in which it ordered William P. Bringman (hereafter "Counsel"), attorney for Dale and Tracy Williams (hereafter "Debtors"), to disgorge compensation he received in excess of $850.00. The motion for reconsideration followed an earlier Memorandum Opinion issued by this court on March 31, 2006, reducing Counsel's compensation to $850.00. On January 9, 2007, the BAP reversed this court's decision, holding that this court should conduct a lodestar analysis when reviewing Counsel's fee application.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157, and the general order of reference entered in this district on July 16, 1984. This is a core proceeding over which the court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2). Venue in this district and division is proper pursuant to 28 U.S.C. §§ 1408.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

*I.    Debtors' Petition and Counsel's Original Application for Fees*

Debtors filed their chapter 7 bankruptcy petition on October 13, 2005. Debtors' statement of financial affairs, summary of schedules, statement of intention, and schedules A-J were filed

1

thirteen days later. On October 29, 2005, Counsel filed a disclosure of compensation as required by 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), which revealed that he had received $850.00 prior to the commencement of Debtors' case. The Rule 2016 disclosure further provided that

> If additional services are needed after the creditors' meeting such as dealing with the trustee on additional information or disposition of assets or with a creditor such as in an adversary proceeding, the service will be rendered at the rate of $175.00 per hour subject to court approval.

In his original Motion on Attorney Fees (hereafter "Original Motion") filed on January 10, 2006, Counsel sought total compensation of $1,933.32 for legal work. He stated that services rendered prior to the meeting of creditors were included in his 2016(b) statement fee of $850.00, while the 371 minutes subsequent to the meeting of creditors were billed at $175.00 per hour. In his Original Motion, Counsel attempted to justify the additional fees by stating that the chapter 7 trustee requested additional documentation regarding Debtors' income and expenses in order to determine whether to refer the matter to the United States Trustee for possible conversion to chapter 13. Counsel's motion provided the following breakdown regarding his post-creditors' meeting fees, for which he sought additional compensation:

| Date | Activity | Time or Expense |
|---|---|---|
| December 1, 2005 | Trip to Canton for creditors' meeting and conference with Mr. and Mrs. Williams concerning documents needed for trustee and probability of chapter 13 proceeding being imposed | 4 hours 35 minutes |
| December 6, 2005 | Telephone call from Mrs. Williams about information for bankruptcy trustee | 1 minute |
| December 8, 2005 | Office conference with Mr. and Mrs. Williams concerning amendments to expense schedule and providing documentation to bankruptcy trustee, preparation of letter to bankruptcy trustee on copies of documents, preparation of letter to creditor on reaffirmation agreement, electronic filing of amended expense schedule and compiling copies of documents for trustee | 346 minutes |
| December 8, 2005 | 135 copies | 13.50 |

2

| December 8, 2005 | Postage | 4.22 |
| December 9, 2005 | Trip to post office for priority mailing | 5 minutes |

This court denied Counsel's Original Motion and limited his compensation to $850.00. Counsel sought reconsideration of his Original Motion and a hearing was held on the matter on April 24, 2006. Subsequently, this court denied the motion for reconsideration and held that Counsel was entitled to $850.00 in fees and $252.72 in expenses. Counsel appealed to the BAP and the BAP issued an opinion remanding Counsel's Original Motion to this court in order to conduct a lodestar analysis of the fee request.

### *II.*   *BAP Opinion*

The BAP states that, in accordance with Boddy v. United States Bankruptcy Court (In re Boddy), 950 F.2d 334 (6th Cir. 1991), the court must undertake a lodestar analysis of Counsel's motion. 2007 FED App. 0001P (B.A.P. 6th Cir. 2007). As a result of the lodestar calculation, the fee award could be higher or lower than the presumptive fee number. Id. The BAP notes that Counsel's "time keeping entries appear[ed] highly suspect" because of the lack of compliance with General Order 93-1 and lumping together of tasks. The BAP states that "the court may consider other relevant factors or issues pertaining to the fee request as well." Id.

### *III.*   *Amended Motion for Attorney Fees and Debtors' Objection*

Following the issuance of the BAP decision, Counsel filed an Amended Motion for Attorney Fees (hereafter "Amended Motion") on January 26, 2007. Counsel notes that he "amends his motion...as a result of the remand of this matter by the Bankruptcy Appellate Panel of the Sixth Circuit Court of Appeals." Counsel's amendment appears to be precipitated by the following comments contained in the BAP opinion: "time keeping entries appear highly suspect. The entries are not kept in one-tenth hour increments as is customary, and as is required by the bankruptcy court's local guidelines under General Order 93-1 ¶ 8. Also certain tasks are 'lumped' together which is prohibited by General Order No. 93-1 ¶ 10. Further, the Appellant has billed for certain secretarial type office tasks in contravention of General Order No. 93-1 ¶ 13." BAP Opinion at 7, n. 4. Counsel's explanation for seeking the additional fees remains the same as is listed in the Original Motion, that the chapter 7 trustee requested additional documentation regarding Debtors' income and expenses in order to determine whether to refer the matter to the United States Trustee for possible conversion to chapter 13. Counsel's Amended Motion breaks down the post-creditors' meeting fee request as follows:

3

| Date | Activity | Time or Expense |
|---|---|---|
| December 1, 2005 | Conference at court with Mr. and Mrs. Williams concerning documents needed for trustee and probability of Chapter 13 being imposed | .6 hours |
| December 6, 2005 | Telephone call from Mrs. Williams about information for bankruptcy trustee | .1 hours |
| December 8, 2005 | Office conference with Mr. and Mrs. Williams concerning amendments to expense schedule and providing documentation to bankruptcy trustee, preparation of letter to bankruptcy trustee on copies of documents, and preparation of letter to creditor on reaffirmation agreement | 1.8 hours |
| December 8, 2005 | 135 copies | 13.50 |
| December 8, 2005 | Postage | 4.22 |
| December 9, 2005 | Trip to post office for priority mailing | .1 hour |

In his Amended Motion, Counsel seeks a total of $1,427.50 for legal services rendered. This figure encompasses the presumptive fee of $850.00 for work done prior to the meeting of creditors, as well as $577.50 for legal services provided subsequent to the meeting of creditors. Counsel also includes post-creditor meeting expenses of $17.72 in his total request and thus seeks an additional $595.22 above and beyond the $850.00 presumptive fee. Counsel states that "the agreed fee for services through the creditors' meeting and completing reaffirmation agreements was $850.00." Counsel indicates that he amended his motion in order to conform to time-keeping requirements of General Order 93-1; alter his travel time request; and eliminate clerical tasks. Transcript of March 19 Hearing at 2, In re Williams, Case No. 05-68109 (Bankr. N.D. Ohio October 13, 2005). Counsel now claims a new travel expense, not previously in his Original Motion, of $94.48, bringing the total expense amount requested to $352.55.

Debtors filed a response to Counsel's Amended Motion on January 30, 2007 and a hearing was held on March 19, 2007. Counsel and Debtors appeared at the hearing. Debtors assert that the "extra information" Counsel is attempting to charge for gathering and reviewing should have been requested and analyzed long before the creditors' meeting. According to Debtors, "that Schedule J, all that information that we had to add, we should have already had this done at this meeting when we were with him before." Transcript of March 19 Hearing at 7. Debtors also indicate that Counsel did not pursue a reaffirmation with the mortgage company.

4

Id. at 13. As a result, the mortgage company is foreclosing on Debtors' home. Id. at 10. Debtors point to their statement of intention in arguing that Counsel was supposed to have completed this reaffirmation agreement for them. Id. at 13. Counsel asserts that he did complete a reaffirmation agreement for the car Debtors intended to retain, but that he did not receive anything from the mortgage company and thought the "statement of intention took care of the matter." Id. at 15. Counsel further states that Debtors did not indicate to him that they were having any problems with the mortgage company.

At the hearing, Debtors presented the court with a copy of their fee agreement (hereafter "Agreement") with Counsel. The Agreement states that "all consultation and preparation of the Chapter 7 bankruptcy petition for filing and all work done through the 341 Creditor's Meeting, including any reaffirmation agreements" is included in the $850.00 flat fee. Further, "any and all work done after the required 341 Creditor's Meeting, other than reaffirmation agreements" would be paid at $175.00 per hour, subject to court approval. In his Amended Motion, Counsel states "the services of Counsel after the creditors' meeting in dealing with the expense issued totaled 3.3 hours and the expenses totaled $17.72 for a total of $595.22" and asserts that "the agreed fee for the services through the creditors' meeting and completing reaffirmation agreements was $850.00." Amended Motion for Attorney Fees at 5. At the hearing on Counsel's Amended Motion he reiterated this statement; specifically articulating that he only seeks additional compensation for the work completed *after* the creditors' meeting and agreed that all work prior to and including attendance at the meeting of creditors was covered in the $850.00 flat fee rate. Transcript of March 19 Hearing at 3.

## DISCUSSION

*I.     Lodestar Calculation*

Sections 329 and 330 limit compensation in a bankruptcy case to the reasonable value of the services provided by a professional. If the compensation paid or agreed to be paid exceeds the reasonable value of services, the court may order the return of any excessive payment to the bankruptcy estate. 11 U.S.C. § 329(b). Even if there are no objections to a fee application, the court has an obligation to review all fee applications to prevent waste of estate asserts or overreaching by attorneys. See In re Riker Indus., Inc., 122 B.R. 964, 970 (Bankr. N.D. Ohio 1990); In re Bush, 131 B.R. 364, 365 (Bankr. W.D. Mich. 1991).

As held by the BAP, In re Boddy requires that, in determining reasonable attorney fees, the court first determine the lodestar amount. 950 F.2d at 337. In order to calculate this amount, the court must "multiply the attorney's reasonable hourly rate by the number of hours reasonably expended." Id. However, the resulting number does not end the inquiry, as the Sixth Circuit has recognized that other factors may be considered in adjusting compensation upward or downward from the lodestar figure to achieve a reasonable result, so long as they do not duplicate factors already considered in determining reasonable hours and rates. Id. at 338-39. These factors are derived from Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

5

See Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004). The Johnson factors are as follows:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases

Johnson, 488 F.2d at 717-19. Though many of these factors are included in the initial lodestar determination, consideration of some of these factors may warrant the upward or downward alteration of the lodestar number. Geier, 372 F.3d at 793-94. A presumptive or "normal and customary" fee can be used as a guidepost in determining the lodestar, so long as the presumptive fee incorporates an assessment of the number of hours required and the rate that would be charged by a local bankruptcy practitioner in an ordinary case. Id. at 338. An upward adjustment is particularly appropriate where "the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" Id. at 794.

### A. Services Rendered Prior to and Including the Meeting of Creditors

Debtors and Counsel concur that the services rendered *prior to* and *including* the meeting of creditors and reaffirmation agreements are included in an $850.00 flat fee. The fee agreement between Debtors and Counsel memorializes this understanding. In fact, Counsel specifically stated at the hearing that the additional compensation he seeks is only for post-creditors' meeting services (Transcript of March 19 Hearing at 3) and his Amended Motion indicates the same, as it expressly states that "the agreed fee for the services through the creditors' meeting and completing reaffirmation agreements was $850.00." Amended Motion for Attorney Fees at 5. Thus, the court does not have grounds to award hourly fees for services up through and including the meeting of creditors, even though they are itemized and included in Counsel's Amended Motion. Because this portion of the fee agreement falls under an $850.00 no-look fee, the court makes no decision as to whether Counsel is entitled to $850.00 for the services he provided and this opinion is not res judicata as to the $850.00 portion of the fee application if Debtors choose to challenge this fee or any other issue in another venue.

### B. Reasonable Hourly Rate

According to the United States Supreme Court, a reasonable hourly rate is the equivalent of the "prevailing market rate in the relevant legal community for similar services by lawyers of

6

reasonably comparable skills, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 895-96 n. 11 (1984). Though this calculation is far from an exact science, the court may consider the customary fees charged for such a case, the level of skill needed for the particular case, the applicant's reputation, and any negative aspects of the case. In re Holder, 207 B.R. 574, 581 (Bankr. M.D. Tenn. 1997).

Because of the volume of cases being filed prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereafter "BAPCPA"), approximately three hundred and seventy chapter 7 cases were filed on the same day as Debtors' petition was filed. If the court looks to the twenty-five cases prior to Debtors' filing and the twenty-five cases subsequent to Debtors' filing and excludes the cases for which nothing was paid for attorney fees, the fees range from a low of $396.00 to a high of $1,000.00. The majority of cases listed attorney fees less than the presumptive fee of $850.00[1]. Excluding the instant case, in only one of these sampled cases did the attorney receive more than $850.00 and the case in which the attorney received $1,000.00 was a corporate chapter 7 filing. These fees clearly are not an aberration, as roughly thirty different attorneys are included in this sample.

In an ordinary and routine chapter 7 case, the tasks necessary to achieve the debtor's ultimate objective – entry of a discharge and the accompanying fresh start – are not likely to consume more than five to six hours of attorney time. If a routine and uncomplicated chapter 7 case consumes approximately five to six hours of attorney time and the majority of cases include attorney compensation of $850.00, the $175.00 per hour fee sought by Counsel is higher than the prevailing market rate in the community for similar services. The correct range would be from approximately $125.00 to $150.00 per hour. Further indicating that the court should lower the hourly fee charged by Counsel is the relative infrequency with which Counsel files bankruptcy cases. Counsel filed only ten cases in the Ohio Bankruptcy Courts for the Northern District of Ohio between March 2003 and October 2005. Thus, he does not possess the type of experience that would merit a higher hourly rate than the prevailing community rate. Finally, the level of skill needed for this particular case does not compel the court to maintain the $175.00 hourly fee of Counsel. This is a simple case involving two secured creditors, four unsecured creditors, and the reaffirmation agreement that was concluded was prepared by the creditor. In sum, this case requires no skill that exceeds that of practitioners charging the prevailing market rate of $125.00 - $150.00. Counsel offers no evidence as to why his reasonable hourly rate should be higher than the prevailing rate in the community at the time of the filing of the case. Accordingly, the proper hourly rate for Counsel in this case is $150.00.

---

[1] The breakdown for attorney fees in the sample cases are as follows: 1 @ $0.00; 3 @ $396.00; 2 @ $400.00; 1 @ $491.00; 6 @ $500.00; 1 @ $550.00; 11 @ $600.00; 2 @ $625.00; 2 @ $650.00; 1 @ 660.00; 1 @ $674.00; 6 @ $700.00; 1 @ $725.00; 1 @ $741.00; 4 @ $750.00; 1 @ $800; 2 @ $809.00; 3 @ $850.00; 1 @ $1,000.00.

### C. Number of Hours Reasonably Expended

#### 1. Overarching Problem

The required discussion regarding the reasoning for the disallowance of each time entry is included *infra*. However, the fundamental problem in this case stems directly from Counsel's submission of bad schedules under the law at time the case was filed. The work Counsel completed subsequent to the submission of the schedules was therefore needed to make up for the schedules filed at the commencement of the case. The inevitability of a chapter 13 inquiry based upon the large amount of monthly disposable income on Debtors' original schedules as filed is demonstrated by the line of 707(b) cases in the pre-BAPCPA era. In both prominent Sixth Circuit 707(b) cases, the Sixth Circuit notes that the ability to pay may alone warrant dismissal of a chapter 7 case. Behlke v. Eisen (In re Behlke), 358 F.3d 429, 434 (6th Cir. 2004); In re Krohn, 886 F.2d 123, 126 (6th Cir. 1989). The primary way in which courts determine an ability to pay in the 707(b) context is to assess whether adequate disposable income exists to fund a chapter 13 plan. In re Behlke, 358 F.3d at 435. The Bankruptcy Code defines disposable income as income "received by the debtor and which is not reasonable necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2). Disposable income is calculated from schedules I and J and is present if a debtor's monthly income exceeds his expenses. In the case at hand, Debtors' original schedules show a disposable income of $1,184.20 per month. With such a high disposable income number, it was foreseeable at the commencement of the case that the chapter 7 trustee would conclude that Debtors could fund a chapter 13 plan. Thus, the balance of the work performed by Counsel for which he seeks additional compensation is a direct result of his submission of improper schedules. He later submitted schedules showing radically different amounts that resulted in no further action by the trustee. These schedules should have been submitted originally for two reasons. First, they are apparently the truth, not those submitted originally. Second, the chapter 7 was doomed to fail based on the extant law.

#### 2. Other Timekeeping Issues

##### a. Counsel's 3.3 Hour Calculation

In his Amended Motion, Counsel states that he seeks compensation for post-creditors' meeting activities of $595.22, totaling 3.3 hours of attorney time plus expenses of $17.72. However, the court concludes that this number is incorrect. Looking at Counsel's Amended Motion, it appears that the services *after* the meeting of creditors total 2.6 hours consisting of the following entries:

December 1 – Conference at court with Mr. and Mrs. Williams concerning
        documents needed for trustee and probability of Chapter
        13 being imposed (.6 hours)

8

December 6 – Telephone call from Mrs. Williams about information for bankruptcy trustee (.1 hours)

December 8 – Office conference with Mr. and Mrs. Williams concerning amendments to expense schedule and providing documentation to bankruptcy trustee, preparation of letter to bankruptcy trustee on copies of documents, and preparation of letter to creditor on reaffirmation agreement (1.8 hours)

December 9 – Trip to post office for priority mailing (.1 hour)

Adding this time, the court calculates the correct total time of 2.6 hours. Though Counsel failed to explain this differential in either his motion or at the hearing, it appears as if he may be including his December 1, 2005 attendance at the creditors' meeting in the 3.3 time total, since that particular entry is listed at .7 hours. According to Counsel, both at the hearing and in his motion, the $850.00 flat fee included services "through the creditors' meeting." Further, when Debtors voiced their concern about Counsel charging them when he instructed them to go to the incorrect room for the meeting of creditors, Counsel stated, "We did have the agreement that there would be – if there would be extra work after the creditors' meeting other than reaffirmation agreements that it would be at the hourly rate. As far as going to the meeting and getting into the wrong room, of course that would have been a part of the $850.00 fee." Transcript of March 19 Hearing at 14. Accordingly, without further presentation of evidence by Counsel, the court will deem 2.6 hours the correct total for which Counsel seeks additional compensation for attorney services rendered subsequent to the creditors' meeting.

> b. *December 1, 2005 (Conference at Court) and December 6, 2005 (Telephone Call)*

As discussed *infra* in Section I(C)(3), the possibility of a chapter 13 inquiry by the trustee should have been apparent *at the time of filing* due to the large amount of disposable income remaining per month once the numbers from Debtors' original Schedules I and J were calculated. As such, it is not reasonable for Counsel to charge Debtors for .6 hours of discussion after the creditors' meeting, when the discussion should have occurred prior to the meeting of creditors. The same problem arises with Counsel's December 6th phone discussion with Mrs. Williams. Counsel cannot reasonably charge for a December 6th telephone call from Mrs. Williams when the documents and questions concerning a conversion to chapter 13 would have been obtained and answered *prior* to the meeting of creditors by a reasonably competent bankruptcy attorney, given the figures presented in Schedules I and J. For this reason, the .6 hour entry on December 1, 2005 is disallowed, as is the December 6, 2005 entry for .1 hours.

> c. *December 8, 2005 (Office Conference)*

The time entry on December 8, 2005, for 1.8 is disallowed in its entirety for several

9

reasons. First, the entry violates General Order 93-1 by impermissibly "lumping" tasks. As stated in General Order 93-1, "if separate tasks are performed on a single day, the fee application shall disclose the time required for each task." Lumped entries are particularly difficult because they make it nearly impossible for a court to determine which tasks are compensable and which are not. In re New Boston Coke Corp., 299 B.R. 432, 446-47 (Bankr. E.D. Mich. 2003); see also In re McNally, 2006 Bankr. LEXIS 1712 at *26 (Bankr. D. Colo. 2006) (unpublished). Because Counsel lists several tasks in this one entry -- office conference concerning amendments, preparation of letter to bankruptcy trustee, and preparation of letter to creditor on reaffirmation agreement -- for a total of 1.8 hours, the court cannot determine how much time was spent on each task. Therefore, the entire entry should be disallowed.

Further, the entire entry should also be disallowed on other grounds. First, there is no explanation as to why Counsel waited until December, after the meeting of creditors, to begin work on the vehicle reaffirmation agreement. In Debtors' statement of intent, dated October 26, 2005 and well before the meeting of creditors, Debtors indicated their desire to reaffirm both real estate[2] and an automobile. Because there is no valid reason as to why the reaffirmation agreement was not completed prior to the meeting of creditors, the time expended on the preparation of the letter to creditor on the vehicle reaffirmation agreement is disallowed.

Second, the portion of the time entry seeking compensation for an office conference to amend schedules, provide documentation to the trustee, and prepare a letter to the trustee on documents is also disallowed because the amendments of schedules were items that should have been done *prior* to the meeting of creditors. The information contained in the amendments was information that Counsel should have obtained from Debtors during the initial stages of consultation. The court realizes that this filing came only a few days before the implementation of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. However, this does not excuse Counsel from being required to obtain this type of crucial information in the early stages of the bankruptcy. In fact, Counsel had another thirteen days to analyze Debtors' information, as he did not file their schedules A-J until October 26, 2005. The added or higher expenses listed in Debtors' amended Schedule J should have been apparent at the time of the filing of the original schedules.[3] The schedules originally filed are evidence of the fact that

---

[2] There is serious doubt as to whether Counsel properly fulfilled his duty with regards to the reaffirmation agreement on the real estate. At the hearing, Debtors pointed to their statement of intention in arguing that Counsel had a responsibility to complete the reaffirmation agreement for them. Counsel stated that he thought the "statement of intention took care of the matter" and assumed the real estate was considered reaffirmed, even though the mortgage company "did not provide any papers" to reaffirm. Transcript of March Hearing at 15. Looking at the docket, a reaffirmation agreement was never filed concerning the real estate.

[3] For example, the original Schedule J listed $100.00 per month for food. Amended Schedule J lists $350.00 per month in food. The appropriate and correct amount should have been calculated prior to the filing of the original schedules. It does not seem feasible that, from the end of October when the schedules were originally filed to the beginning of December when the amended schedules were filed, the monthly food budget would change so dramatically.

10

Counsel should have obtained this information prior to the meeting of creditors. The original Schedule I lists a total combined monthly income of $3,307.67 and the original Schedule J lists total monthly expenses of $2,123.40, leaving disposable income of $1,184.20 per month. A reasonably competent bankruptcy attorney would know from this large disposable income figure that the trustee would question whether the case should be converted to a chapter 13. Thus, the need for documents and amendments should have been recognized during Counsel and Debtors' initial consultations.

It is not reasonable for Debtors to be required to compensate Counsel for correcting schedules and obtaining information that was necessary to provide the trustee with the level of detail that should have been provided at case opening and correct inconsistencies that also should have been discussed and analyzed at the inception of the case. Due to the fact that the amendments and additional required documents were items that should have been provided and completed prior to the meeting of creditors and potential questions surrounding conversion to chapter 13 should have been readily apparent from the original schedules, the court disallows the portion of the December 8th entry concerning amendments, providing documentation to the trustee, and preparing a letter to the trustee. The tasks performed should have been performed prior to the meeting of creditors, which would bring them within the purview of the $850.00 flat fee cited in the fee agreement.

### d. December 9, 2005 (Trip to Post Office)

The entry on December 9, 2005 seeks compensation for .1 hours of time for a "trip to post office for priority mailing." In general, courts have determined that clerical work is not the type of task that can be billed to the client because it is considered part of the attorney's overhead. In re Newman, 270 B.R. 845, 849 (Bankr. S.D. Ohio 2001); In re Bass, 227 B.R. 103, 107 (Bankr. E.D. Mich 1998); In re Castorena, 270 B.R. 504, 516 (Bankr. D. Idaho 2001); McNally, 2006 Bankr. LEXIS 1712 at *19-20. As one court notes, simply because an attorney has no paid staff members, "this does not mean that he may charge a lawyer's rate to run to the mailbox or stand at the copier." In re Castorena, 270 B.R. at 516. Thus, the .1 entry on December 9, 2005 is deemed clerical work that more appropriately fits within Counsel's overhead and is therefore disallowed.

### D. The Lodestar Figure

As indicated in the summary above, a total of 0 hours should be multiplied by the reasonable hourly rate of $150.00 to arrive at $0.00. Thus, the lodestar figure in this case for post-creditors' meeting attorney fees is $0.00.

11

### E. *Possible Upward or Downward Adjustment of the Lodestar Number*

After considering the Johnson factors listed above, making sure not to duplicate factors[4] already considered when determining the reasonable hourly rate, the court concludes that this case does not warrant an upward adjustment of the lodestar number and, because the lodestar number is $0.00, a downward adjustment is not feasible. The higher-than-average time spent on this case was a direct result of Counsel's relative inexperience in the bankruptcy field. Further, there is no likelihood that representation of Debtors in this case would preclude Counsel from other employment. No remarkable results were achieved by Counsel in this case and there is some question as to whether Debtors' fresh start was compromised by Counsel's failure to conclude a reaffirmation agreement with Debtors' mortgage company. Counsel presents no evidence that Debtors were longstanding clients, such that it would be important for him to represent them in this particular case. Further, there is nothing to suggest that this particular case was undesirable. Thus, the lodestar figure remains at $0.00.

### II. *Expenses*

This court previously awarded Counsel $252.72 in expenses and included amounts for The chapter 7 filing fee[5], copies, postage, and amendment fees. Counsel did not appeal this award of expenses. He clearly designed in his statement of issues to be presented on appeal only one issue and his statement of issues to be presented in appeal is devoid of any mention of an appeal of the expense award. Appellant's Designation of Contents for Inclusion in Record and Statement of Issues to be Presented in Appeal (dkt. #39). As such, the court need not revisit the expense award.

### **CONCLUSION**

The hourly rate sought by Counsel is not reasonable, considering the prevailing rate in the community at the time this case was filed. Therefore, the reasonable hourly rate should be $150.00. Further, the following time entries are disallowed for the reasons specified above: .6 hours on December 1, 2005; .1 hour on December 6, 2005; 1.8 hours on December 8, 2005; and .1 hour on December 9, 2005. Utilizing the lodestar method to determine an appropriate attorney fee award for post-creditors' meeting services, the court

---

[4] The novelty and difficultly of the questions involved and the skills requisite to perform the legal service properly are not discussed, as they were considered when determining the hourly rate. Other Johnson factors, including awards in similar cases, the fee customarily charged in the locality for similar legal services, and experience of the attorney are also discussed and considered in the reasonable hourly rate portion of the lodestar calculation, so will not be considered at this stage of the analysis.

[5] According to Debtors' Statement of Financial Affairs, Debtors have already paid Counsel the $209.00 filing fee.

12

determines the lodestar amount to be $0.00. In addition, the remaining <u>Johnson</u> factors not considered in the lodestar analysis certainly do not indicate that an upward adjustment is warranted. Counsel is entitled to $0.00 for post-creditors' meeting attorney fees. Because the previous expense award was not appealed, the court need not re-examine that issue.

      A separate order is issued herewith.

/s/ Russ Kendig
_____
**Judge Russ Kendig**
**U.S. Bankruptcy Judge**

JUN 2 7 2007

13

## Service List

Dale & Tracy Williams
58 Front Street
P.O Box 86
Burbank, OH 44214

William P. Bringman
13 E. College Street
Fredericktown, OH 43019-1192

Anne Piero Silagy
220 Market Ave. S.
#300
Canton, OH 44702

United States Trustee
Howard Metzenbaum Courthouse
201 Superior Ave.
Cleveland, OH 44114